**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DONALD CRONIN, | ) | CASE NO. 1:20-cv-00874 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Donald Cronin ("Plaintiff"), challenges the final decision of Defendant Kilolo

Kijakazi, Acting Commissioner of Social Security ("Commissioner"),[1] denying his applications

for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under

Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This

court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United

States Magistrate Judge pursuant to consent of the parties. (R. 9). For the reasons set forth below,

the Commissioner's final decision is AFFIRMED.

### I. Procedural History

On February 12, 2018, Plaintiff filed his applications for DIB and SSI, alleging a disability

onset date of August 3, 2017. (R. 15, Transcript ("Tr.") 175-184). The applications were denied

initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

Law Judge ("ALJ"). (Tr. 115-142). Plaintiff participated in the hearing on August 3, 2019, was

represented by counsel, and testified. (Tr. 38-70). A vocational expert ("VE") also participated

and testified. *Id*. On September 4, 2019, the ALJ found Plaintiff not disabled. (Tr. 21). On March

26, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the

ALJ's decision became the Commissioner's final decision. (Tr. 1-6). On April 23, 2020, Plaintiff

filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have

completed briefing in this case. (R. 16 & 18).

Plaintiff asserts the following assignment of error: the residual functional capacity ("RFC")

determination failed to account for all of his limitations. (R. 16, PageID# 672).

## II. Evidence

### A. Relevant Medical Evidence[2]

Prior to his alleged onset date, on May 8, 2017, Plaintiff was seen by Barbara Vizy, M.D.,

complaining of chronic and worsening fatigue causing moderate limitations with activities. (Tr.

579). Plaintiff reported triggers included working 12-hour shifts four days a week, being a single

father, and four hours of broken sleep nightly. *Id*. Plaintiff was noted as having multiple sclerosis

(MS). *Id*. Plaintiff also reported chronic and worsening spasms occurring daily. *Id*. He was not

taking any medication for his MS. *Id*. On neurologic examination, Plaintiff exhibited a normal

gait, intact deep tendon reflexes, normal coordination, normal motor strength in all four

extremities, and resting tremors. (Tr. 581). Plaintiff was encouraged to follow up with his

neurologist and to improve his time allowance for sleep. (Tr. 582).

---

[2]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions
of the record cited by the parties in their briefs and also deemed relevant by the court to the
assignments of error raised.

On August 14, 2017, Plaintiff was seen by a nurse practitioner, and reported that he lost his job of fourteen years after falling asleep at work. (Tr. 583). Plaintiff had not seen a neurologist as recommended. *Id*. His last MS relapse was in April of 2017. *Id*. On examination, Plaintiff displayed normal strength in his left arm and legs, and slight weakness in his right arm. (Tr. 585). He further exhibited intact deep tendon reflexes, normal gait with conventional walking, but sighing with tandem walking and swaying to the right during a Romberg test. *Id*. He was advised to follow up with a neurologist. (Tr. 586).

On November 13, 2017, Plaintiff saw Dennis Grossman, M.D., for his MS. (Tr. 426-427). Plaintiff was not at risk for falls, and he had no new issues. *Id*.

On January 30, 2018, Plaintiff was seen for the first time as a new patient by neurologist Joseph Hanna, M.D. (Tr. 330). Plaintiff reported poor energy and balance, no cane or walker, daily pain in his left extremities, and "OK" mood. (Tr. 331). Dr. Hanna noted Plaintiff had been diagnosed with MS in 2003, but was not recently on any medication. *Id*. Previously, Plaintiff had been treated with Gilenya but stopped after developing Zoster (Shingles). *Id*. On examination, Plaintiff displayed normal motor tone, 5/5 strength, no tremors, decreased reflexes, mild ataxic gait, and decreased proprioception and vibration in his extremities. (Tr. 333). Dr. Hanna's plan was for an MRI of the head, a prescription for Prozac, an application for social security disability (SSD), no immunotherapy, and a follow-up in three months. *Id*.

On March 13, 2018, State Agency medical consultant Abraham Mikalov, M.D., considered the medical evidence of record and indicated Plaintiff suffers from multiple sclerosis, sleep-related breathing disorders, dermatitis, and sprains/strains resulting in loss of sensation, fatigue, and tremors. (Tr. 74-75). Dr. Mikalov concluded Plaintiff was limited to a reduced range of medium work, including the ability to lift/carry 50 pounds occasionally and 25 pounds

frequently, stand/walk for six hours and sit for six hours each during an eight-hour workday. (Tr. 75-76). Dr. Mikalov further found that Plaintiff had no manipulative, visual, or communicative limitations, restrictions; he could never climb ladders, ropes, or scaffolds; and, should avoid all exposure to hazards. (Tr. 76-77).

On April 19, 2018, an MRI of the head revealed the following:

> [M]ultiple scattered small foci of T2/FLAIR hyperintensity in the subcortical and periventricular white matter of both cerebral hemispheres, many of which are oval in morphology, and a few of which have a visible central vessel, typical of multiple sclerosis. No similar lesions are identified in the brainstem, cerebellar white matter, or visualized upper cervical spinal cord. None of the supratentorial lesions show abnormal enhancement or restricted diffusion.

(Tr. 379-380).

On May 14, 2018, Plaintiff reported to Dr. Grossman that he still had balance and tremor issues, but no falls. (Tr. 353-354). He reported feeling tired and an inability in the past to tolerate immunosuppressant medications that resulted in too many infections. *Id*.

On June 19, 2018, nearly six months after his prior visit, Plaintiff had a follow-up with Dr. Hanna with a chief complaint of relapsing MS. (Tr. 349). He had no vision issues, no bladder issues, and no pain, with the primary issue reported was his balance. (Tr. 349-350). On review of symptoms, Plaintiff rated his pain as one on a ten-point scale. (Tr. 351). On physical examination, he displayed normal sensation, no dysmetria, mildly ataxic gait, 3/4 reflexes right greater than left, increased tone in the left extremities and mild right paresis. (Tr. 352). Dr. Hanna's plan was for a letter for disability, healthful living, discussed immunotherapy and CS for relapses, no other medications, and follow-up in six months. *Id*.

On August 8, 2018, State Agency medical consultant Steve McKee, M.D., noted that Plaintiff "alleged that he is often tired, has tremors and numbness, and cannot stand/walk for

long periods. MER [medical evidence of record] supports the existence of such symptoms, but on the initial claim physical exams show normal strength and coordination. On the reconsideration claim, [Plaintiff] reports worsening MS. MER supports relapse. Fully consistent overall." (Tr. 97). Dr. McKee completed an RFC assessment finding Plaintiff was limited to a reduced range of light work, including the ability to lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk for six hours and sit for six hours each during an eight-hour workday. (Tr. 97-100). Dr. McKee further found that Plaintiff had no manipulative, visual, or communicative limitations, restrictions; could never climb ladders, ropes, or scaffolds; could occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; and, should avoid all exposure to hazards. (Tr. 98-99).

On August 24, 2018, Plaintiff returned to Dr. Grossman, who noted Plaintiff's "MS stable and Balance and tremors [sic] Some blurred visoin [sic]." (Tr. 491). Plaintiff was not considered a fall risk. *Id*. Plaintiff reported no joint pain or swelling, sleeping well with good diet and activity, no cramps, feeling tired, and losing weight. (Tr. 491-492).

On December 4, 2018, Plaintiff saw Dr. Hanna, and was not considered at risk for falls. (Tr. 502; Exh. 9F). At that time, Plaintiff rated his pain as "mild 5" on a ten-point scale. (Tr. 505). On neurologic examination, Plaintiff had a mild wide-based gait, normal speech, normal motor strength, increased tone in his legs, no tremors, normal sensation in all four extremities, and 1/4 reflexes in the upper extremities with 3/4 patellar reflexes. (Tr. 506). Plaintiff did not receive additional medication, good health measures were noted, and he was instructed to follow up in six months. *Id*. Dr. Hanna's impression/suggestions included relapsing progressive MS, and a notation that Plaintiff was "[u]nable to work with cognitive and motor issues." *Id*.

On June 4, 2019, Dr. Hanna saw Plaintiff, who reported his last relapse was weeks ago. (Tr.

513). Dr. Hanna's impression of the earlier MRI was "[m]ild burden of nonspecific supratentorial white matter disease most consistent with the history of multiple sclerosis. No enhancing white matter lesions or mass effect." *Id*. On review of symptoms, Plaintiff reported depressed mood for which he had no medication, and no musculoskeletal issues. (Tr. 515). On a ten-point scale, Plaintiff reported leg pain that he rated as "mild 5." *Id*. On neurologic examination, Plaintiff had increased tone in his left extremities with no tremor and mild right leg paresis, absent reflexes, and mild wide-based gait, right paretic. (Tr. 516). Dr. Hanna opined Plaintiff was "[u]nable to work with cognitive and motor issues." *Id*.

Also on June 4, 2019, Dr. Hanna completed a checklist-style "Multiple Sclerosis Questionnaire." (Tr. 509-510). Dr. Hanna checked "Yes" when asked whether "clinical findings demonstrate persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction which substantially interferes with the use of at least two extremities?" (Tr. 510). Dr. Hanna checked additional boxes that Plaintiff had psychological or behavioral abnormalities resulting in: disorientation to time and place; memory impairment; perceptual thinking disturbances (*e.g.* hallucinations or delusions); disturbance in mood; and, emotional liability and impairment in impulse control. *Id*. Dr. Hanna checked boxes indicating Plaintiff had marked limitations in all areas of mental functioning.[3] (Tr. 511). Finally, Dr. Hanna checked "Yes" when asked whether Plaintiff exhibited "significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity … ?" (Tr. 511). The forms contains no explanation for Dr. Hanna's opinions other than the

_____

[3] The form did not define for the completing physician the term "marked." (Tr. 510-511).

comment "Multiple Sclerosis – Progressive 16 yrs." *Id*.

**B. Relevant Hearing Testimony**

At the August 23, 2019 hearing, Plaintiff testified as follows:

- He has a drivers' license and drives every day. (Tr. 46).

- He graduated high school. (Tr. 46).

- He has not worked since his alleged onset date. (Tr. 47).

- He worked as a quality control technician from 2004 to 2017. He worked twelve-hour shifts the entire time. (Tr. 46-47). Half the shift was performed seated. *Id*. The heaviest he lifted was three pounds. *Id*.

- He could not work due to issues with concentration, memory loss, sometimes blurred vision, and tremors, numbness, pain, and stiffness in his arms and legs. (Tr. 48). His pain is constant throughout the day, and he rates his pain a ten on a ten-point scale but not "emergency room" bad. (Tr. 49, 55). He takes Ibuprofen for pain. *Id*. Upon questioning by counsel, Plaintiff clarified that on an average day, his pain is a seven on a ten-point scale. (Tr. 56).

- He can sit all day, but can only stand for ten minutes and can walk about 100 feet with his cane. (Tr. 50). The cane was not prescribed. *Id*. He can comfortably lift less than ten pounds. *Id*.

- He spends his days reading and watching television. (Tr. 51). He has difficulty following the plot. *Id*.

- His girlfriend performs the household chores. (Tr. 52-53).

- He had no side effects from his current medications. (Tr. 53).

- His condition has deteriorated since his alleged onset date. He has fallen more often and has experienced MS relapses once or twice per month. (Tr. 54).

- He has received no treatment for obstructive sleep apnea since August of 2017. (Tr. 55).

- He has tremors in his arms once a week that last a few minutes. (Tr. 57). It is difficult to pick up a gallon of milk. (Tr. 58). He falls two to three times per month. (Tr. 60).

The VE classified Plaintiff's past work as that of a wire inspector, Dictionary of

Occupational Titles (DOT) 691.367-010 classified as skilled, with an SVP-5, and light exertional

and actually performed at the light exertional level. (Tr. 64).

The ALJ posed the following hypothetical question to the VE:

> [A]ssume a hypothetical individual of the Claimant's age and education, and with
> the past position that you've identified. Further, assume that the hypothetical
> individual is limited as follows, to light, occasional climbing of ramps and stairs,
> never to climb ladders, ropes, or scaffolds, occasional stoop, kneel, crouch, crawl.
> Never be exposed to unprotected heights, moving mechanical parts, or operate a
> motor vehicle.

(Tr. 64).

The VE testified that such an individual could perform Plaintiff's past relevant work both as

actually performed and as generally performed in the national economy. (Tr. 64-65). In addition,

the VE identified the following jobs as examples that such an individual could perform: cashier

II, DOT 211.462-010, light, unskilled, with an SVP of 2 (810,000 jobs nationally); merchandise

marker, DOT 209.587-034, light, unskilled, with an SVP of 2 (282,000 jobs nationally); and,

housekeeping, cleaner, DOT 323.687-014, light, unskilled, with an SVP of 2 (180,000 jobs

nationally). (Tr. 65).

A second hypothetical, which the ALJ posed, was same as the first with the additional

limitation of only occasional balancing, but it did not alter the VE's testimony. (Tr. 65). The ALJ

then posed a third hypothetical: "assume the same limitations I described in Hypothetical #2, but

now I'm modifying it as follows, frequent handling with the right and the left, frequent fingering

with the right and the left, frequent right and left hand controls, frequent right and left foot

controls." (Tr. 65-66). The VE again testified that such an individual could perform Plaintiff's

past work as well as the other jobs identified. (Tr. 66).[4]

---

[4] The court omits the other hypotheticals posed, as they do not correspond with the RFC actually

8

The VE testified that employers generally do not accept an off-task rate of more than fifteen percent or absences exceeding one per month. (Tr. 67).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work

---

adopted in the decision.

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since August 3, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairment: multiple sclerosis (20 C.F.R. § 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently operate right and left foot controls; frequently operate right and left hand controls; frequently handle with the right and the left; frequently finger with the right and the left; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle.

6. The claimant is capable of performing past relevant work as a Wire Inspector. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

10

7.      The claimant has not been under a disability, as defined in the Social
        Security Act, from August 3, 2017, through the date of this decision (20
        CFR 404.1520(f) and 416.920(f)).

(Tr. 12-21).

### V. Law and Analysis

**A. Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether it is

supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v.*

*Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a

whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look

into any evidence in the record to determine if the ALJ's decision is supported by substantial

evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court

does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.

*Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ

failed to apply the correct legal standards or made findings of fact unsupported by substantial

evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).

Substantial evidence is more than a scintilla of evidence but less than a preponderance and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned

even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.  Plaintiff's Assignments of Error

### 1. Residual Functional Capacity (RFC) Determination

In the sole assignment of error, Plaintiff argues the ALJ erred by concluding that he

retained the RFC to perform light exertional work and his past relevant work as a wire inspector.

(R. 16, PageID# 672). Plaintiff contends the RFC fails to adequately account for the limitations

occasioned by his MS, and that medical evidence of record "strongly supports" his claims. *Id.*

A claimant's RFC is an indication of an individual's work-related abilities *despite* their

limitations. *See* 20 C.F.R. §§ 404.1545(a).The ALJ bears the responsibility for assessing a

claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c); *see also Poe*

*v. Comm'r of Soc. Sec.*, 342 F. App's 149, 157 (6ᵗʰ Cir. 2009) ("The responsibility for

determining a claimant's residual functional capacity rests with the ALJ, not a physician.")

To the extent Plaintiff is asking the court to reweigh the evidence *de novo* and arrive at its

own RFC determination, such an invitation exceeds the scope of this court's review. The court

can only review whether the ALJ's decision was supported by substantial evidence. The Sixth

Circuit has explained,

> [The plaintiff] additionally argues that the ALJ's RFC determination was not
> supported by substantial evidence. "[T]he threshold for such evidentiary
> sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d
> 504 (2019). Substantial evidence in this context "means—and means only—'such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.
> Ct. 206, 83 L. Ed. 126 (1938)). This standard means that "the Commissioner's
> decision cannot be overturned if substantial evidence, or even a preponderance of
> the evidence, supports the claimant's position, so long as substantial evidence also
> supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336
> F.3d 469, 477 (6ᵗʰ Cir. 2003). In reviewing the ALJ's decision, we 'may not try
> the case *de novo*, nor resolve conflicts in evidence, nor decide questions of
> credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6ᵗʰ Cir. 1984). Finally, [the
> plaintiff] bears the burden of demonstrating a RFC more restrictive than that
> determined by the ALJ. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6ᵗʰ

Cir. 2008).

*O'Brien v. Comm'r of Soc. Sec.*, 819 Fed. App'x 409, 416 (6th Cir. 2020). "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence." *Collins v. Comm'r of Soc. Sec.*, 357 Fed. App'x 663, 670 (6th Cir. 2009) (citations omitted).

The regulations now refer to the opinions of State Agency physicians as a "prior administrative medical finding," which is defined as "a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review … in your current claim based on their review of the evidence in your case record, such as: (i) [t]he existence and severity of your impairment(s); (ii) [t]he existence and severity of your symptoms; (iii) [s]tatements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; … (v) [i]f you are an adult, your residual functional capacity …." 20 C.F.R. §§ 404.1513(a)(5) & 416.913(a)(5). The ALJ's determination that Plaintiff could perform a limited range of light exertional work is supported by the opinions of State Agency physicians Dr. Mikalov and Dr. McKee (*i.e.* prior administrative medical findings). (Tr. 74-77, 97-100). Both assessed that Plaintiff could work at an exertional level of light or greater. *Id*. Consistent with the RFC, they further opined Plaintiff could never climb ladders/ropes/scaffolds and could occasionally climb ramps/stairs, stoop, crouch, and crawl, and never climb ladders, ropes, or scaffolds. (Tr. 18). The ALJ found these opinions to be persuasive, though the ALJ added some additional restrictions "to account for the claimant's most recent treatment, physical exam findings, and subjective complaints."[5] *Id*.

---

[5] The revised regulations clarify that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

There is ample case law concluding that State Agency medical consultative opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work."). Thus, an RFC determination that is based upon the medical opinions of State Agency consultants is generally supported by substantial evidence.

Despite captioning their assignment as a challenge to the supportability of the RFC, the bulk of Plaintiff's argument revolves around the ALJ's credibility determination of Plaintiff's alleged symptoms. (R. 16, PageID# 675-679). However, "credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461,

---

administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a) & 416.920c(a).

463 (6th Cir. 1987). An ALJ is not required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). The *Villarreal* court noted "tolerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded." *Villarreal*, 818 F.2d at 463 (citations omitted). Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation").

"In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p, 2017 WL 5180304 at *10. Rather, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. A reviewing court should not disturb an ALJ's credibility determination "absent [a] compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and "in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

15

According to SSR 16-3p, evaluating an individual's alleged symptoms entails a two-step process that involves first deciding whether a claimant has an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."[6] 2017 WL 5180304 at *2-3. The ALJ's decision found the first step was satisfied, because "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 16).

After step one is satisfied, an ALJ should consider the intensity, persistence, and limiting effects of an individual's symptoms. The ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*.

Specifically, the decision found as follows:

> The claimant alleges that he cannot sustain full time employment due to a combination of symptoms from his impairments including multiple sclerosis stage 2, melanoma, and obstructive sleep apnea (2E; 4E; hearing testimony). The claimant testified that he is unable to work due to issues related to his multiple sclerosis and cited to issues with concentration, memory loss, tremors, and his physical abilities (hearing testimony). He reported that his legs and arms are in constant pain throughout the day and rate[d] it as a 7/10 with medication. He explained that he experiences tremors in his arms approximately once per week that last for several minutes (4E/7; hearing testimony). He testified that since the

---

[6] "The Sixth Circuit characterized SSR 16-3p … as merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the SSR 16-3p and the prior social security ruling, and the changes largely reflect a preference for a different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). While the court applies the current SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical.

16

alleged onset date his impairments have worsened and cited to falls and relapses, explaining that he experiences a multiple sclerosis relapse one to two times per month and that he falls approximately two to three times per month (hearing testimony). The claimant reports that his conditions are exacerbated by groups of people – 10 or more – and improved with a non-prescribed cane. He also reports that he has chronic fatigue, experiences confusion and forgetfulness[.] In terms of his physical abilities, the claimant testified that he is able to sit all day, stand for 10 minutes, walk 100 feet without [sic] his cane and 50-100 feet without it, and can lift less than 10 pounds, explaining he has difficulty lifting a gallon of milk (hearing testimony).

***

The claimant has a documented history of multiple sclerosis for which he continues to follow up and treat. The claimant was diagnosed with relapsing progressive multiple sclerosis in 2003 (5F/3). Throughout the relevant period, the claimant generally reported poor energy with fatigue, pain in his lower extremities, and arm weakness with relapse of his multiple sclerosis (2F/4; 5F). Prior to the alleged onset date, the claimant reported a relapse of his MS in March 2017, reporting arm weakness, with sudden onset and gradual resolution, but notes indicate he returned to work (13F/50). In May 2017, prior to the alleged onset date of August 3, 2017, the claimant reported chronic and worsening fatigue, with triggers including activity, being a single dad, work schedule that only allows 4 hours of broken sleep daily, and symptoms exacerbated by stress (13F/54). He also reported chronic insomnia, difficulty falling asleep, and disrupted sleep, exacerbated by his sleep schedule due to working only allowing 4 hours of sleep (13F/54). He also reported daily spasms and tremors which were reportedly worse with lack of sleep, but acknowledged that he had not followed up with Dr. Stone for a while and was not taking any medications for his multiple sclerosis at that time (13F/54). The physical exam showed that his deep tendon reflexes were intact, he demonstrated no ataxia or unsteadiness in his gait, his coordination was normal, and his strength was noted to be normal (13F/56). The claimant was encouraged to follow up with his neurologist at the Mellen Center and to try to improve time allowance for sleeping (13F/57).

The claimant continued to report problems with spasms/spasticity at a follow up on August 14, 2017 (13F/58). He reported that he had been fired from his job due to falling asleep on the job of 14 years, stated that he had not yet followed up with his neurologist, and reported his last relapse of multiple sclerosis was in April 2017 (13F/58). The physical exam revealed slight weakness in the right upper extremity and lower extremity, but also noted full strength in the left extremities and normal bulk and tone (13F/60). The notes also indicate sighing with tandem walking; positive Romberg test with swaying to the right; but noted a normal exam for conventional walking, normal shoulder shrug and normal ocular exam (13F/60-61).

17

The most recent imaging of the claimant's brain from April 2018 notes mild burden of nonspecific supratentorial white matter disease most consistent with the history of multiple sclerosis (11F/2). There is no white matter lesions or mass effect as of the MRI from April 19, 2018 (4F/37; 5F/13-14; 11F/2).

Throughout the relevant period, the claimant followed up approximately once every six months, and reported problems with fatigue and only reported symptoms related to relapse of his multiple sclerosis triggered by lack of sleep and stress most recently in April 2017 (8F; 9F; 11F). Generally, his physical exams were unremarkable without abnormal findings (2F/8-10; 9F/2-5; 8F/71; 11F). Specifically, notes from a December 2018 physical examination noted a mild wide base gait, but also indicated normal speech, increased tone in the lower extremities, no tremor, and normal sensory to all four extremities (9F/5). There were no added medications, good health measures were noted, and the claimant was instructed to follow up in six months, which he did in June 2019 where the physical exam findings were similar (9F/5; 11F).

*** 

As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the alleged level of impairment and pain is unsupported by the medical evidence of record. The claimant alleged that he is often tired, with significant fatigue symptoms, has tremors, and numbness, and cannot stand or walk for long periods of time, but the medical evidence including physical exams generally note that he has normal strength and coordination inconsistent with his reports (4F; 8F; 9F; 11F). Additionally, the undersigned notes that the most recent imaging of the claimant's brain notes mild burden of nonspecific supratentorial white matter disease most consistent with the history of multiple sclerosis. There is no white matter lesions or mass effect as of the MRI from April 19, 2018 (4F/36-37; 5F/13; 11F/2). The claimant also testified that he experiences more frequent relapses since the alleged onset date and 2-3 falls per month, but the medical records are not consistent with this testimony, with the records mentioning a relapse in April 2017 and none since the alleged onset date (2F/4; 9F/2; 11F/2; 13F/50, 58). The medical records, likewise, are inconsistent with the frequency of reported falls, and notes from May 2018 indicate the claimant reported balance issues and tremors, but no falls (4F/10). Overall, the claimant's alleged level of impairment and limitation is not supported by the evidence of record.

(Tr. 15-17).[7]

---

[7] The court omits the decision's discussion of Plaintiff's unprescribed cain use, as Plaintiff has not alleged any error in the ALJ's application of Social Security Ruling (SSR) 96-9p.

At the second step, when considering the intensity, persistence, and limiting effects of an individual's symptoms, an ALJ should consider the following seven factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p at *4-8 (same factors as in SSR 96-7p).

In the portions of the decision quoted above, the ALJ provided an extensive discussion of the results of physicians' examinations, focusing in large part on a number of unremarkable or normal findings. Plaintiff suggests the ALJ's review of the medical evidence either omitted or ignored much of the evidence in the record which supports his statements regarding disabling symptoms. (R. 16, PageID# 676). This is simply not the case. Moreover, merely because Plaintiff reported symptoms to medical sources, that does not make them *per se* credible, nor are they transformed into "medical opinions" simply because the patient's statements have been recorded in treatment notes. *See, e.g., Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x 802, 804 (6th Cir. 2011) (concluding the physician's statement "is not a 'medical opinion' at all—it merely regurgitates [the patient's] self-described symptoms"); *accord Paddock v. Comm'r of Soc. Sec.*, No. 1:11-cv-7, 2012 U.S. Dist. LEXIS 135860, 2012 WL 4356711 (W.D. Mich. Sept. 24, 2012); *see also Boughner v. Comm'r of Soc. Sec.*, No. 4:16-CV-1858, 2017 U.S. Dist. LEXIS 89060, 2017 WL 2539839, at *8 (N.D. Ohio May 22, 2017), *report and recommendation adopted*, 2017

U.S. Dist. LEXIS 89061, 2017 WL 2501073 (N.D. Ohio June 9, 2017) (finding that medical records containing observations recorded by a claimant's physician were likely statements made by plaintiff about his condition and not medical opinions as defined by the regulations); *Coleman v. Comm'r of Soc. Sec. Admin.*, No. 1:16-CV-0179, 2016 U.S. Dist. LEXIS 184079, 2016 WL 8257677, at *14 (N.D. Ohio Nov. 29, 2016), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 21835, 2017 WL 633423 (N.D. Ohio Feb. 15, 2017) (finding that "office notes reflect plaintiff's own subjective statements regarding her condition" and, therefore, do not constitute "objective medical evidence"); *Rogers v. Astrue*, No. 11-cv-82, 2012 U.S. Dist. LEXIS 24712, 2012 WL 639473, at *4 (E.D. Ky. Feb. 27, 2012) ("Simply recording Plaintiff's subjective complaints is not objective medical data therefore Dr. Lyons' clinical findings were insufficient to support a deferential review by the ALJ.")

The ALJ also specifically identified examination findings that were not normal, such as slight weakness in extremities, sighing with tandem walking, positive Romberg's test, increased tone, a wide-based gait, and so forth. (Tr. 16-17). While Plaintiff appears to believe that these examination results render him credible, that determination is not for the court to make. As stated above, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard*, 889 F.2d at 681. Further, Plaintiff fails to make any meaningful or compelling argument that an individual with the above examination results would be inherently incapable of performing the assessed RFC. Indeed, absent the abnormal results specifically noted by the ALJ in the decision, it is unlikely he would have arrived at an RFC for a limited range of light work. Though it is undisputed Plaintiff suffers from MS—a diagnosis alone is of little consequence, as it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d

146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th Cir. 2008) ("a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits").

The ALJ's decision plainly discussed several of the seven factors set forth in SSR 16-3p. The ALJ discussed the relative infrequency of Plaintiff's treatment, the lack of medications, inconsistencies with the frequency of falls related during the hearing compared to treatment notes, and inconsistencies with the number of MS relapses related at the hearing versus found in the records.. (Tr. 16-17). Although greater discussion is always preferred, an ALJ is not required to analyze all seven factors, but should consider the relevant evidence. *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) (Baughman, M.J.) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence"); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005) (finding that neither SSR 96-7p nor the regulations "require the ALJ to analyze and elaborate on each of the seven factors when making a credibility determination"); *Wolfe v. Colvin*, No. 4:15-CV-01819, 2016 WL 2736179, at *10 (N.D. Ohio May 11, 2016) (Vecchiarelli, M.J.); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *9 (N.D. Ohio Apr. 4, 2012) (White, M.J.). SSR 16-3p itself states that where "there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor," but rather will only "discuss the factors pertinent to the evidence of record." *Id.* at *8.

Given the high level of deference owed to an ALJ's findings with respect to the evaluation of a claimant's alleged symptoms and resulting limitations, the court—under the circumstances presented herein—does not find the ALJ's credibility analysis was insufficient, as it does not

lack the support of substantial evidence. Thus, Plaintiff's sole assignment of error is without merit.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: September 21, 2021